May it please the court, my name is J.B. Cross. I'm here to represent Bob Robison Commercial Flooring. This is an ensuing loss case under first party insurance coverage that we had and made a claim on. The facts of the situation are fairly straightforward. We were hired to install a gymnasium. Bob Robison was hired to install a gymnasium floor with the attendant painting lines and that sort of thing. The floor was installed and in. At a later time, Mr. Liles, our subcontractor, came in to paint the lines. It became clear after he was finished that the lines he had painted were, they're crooked, they're not in the right spots, they're not centered, they have a number of other things. There's also some bleed over, dots of paint that went out. The act of painting the floor and the bonding to it, all of which occurred as it was being painted, like say over time, caused the entire floor to be rejected. We think that the insurance policy, which does have an exclusion for faulty workmanship, clearly would have not covered the work done by the subcontractor, Liles, because that was faulty. However, the rest of the work was fine until the paint was placed on it and we believe the ensuing loss clause brings us back under coverage in the policy. Or at least you say it's ambiguous, as I understand your position. We've tried to argue it from every point. It seems to me it is ambiguous, for the least reason. There are about ten cases on this point and five of them go one way and five of them go another way. Let me focus, if I can, on what the apparent difference is and the difference between Bob Robinson's position and the RLI position. We disagree on this entirely. What is the ensuing loss here, just factually? How do you describe the loss? The ensuing loss is the damage to the existing gym floor at the time the painting was done. At the time of the painting, right? Yes. The paint was negligently installed? Yes. Okay. Or put down, whatever, painted. Okay. Pretty clearly. You're saying that the workmanship resulted in a covered peril, right? Yes, sir. And the covered peril, you say, is the loss of the gym floor. Damage to the gym floor or loss of the gym floor. Insurance policies use different things. But the factual difference between our positions is the RLI position is that there have to be two separate events, two different events, two things that happened that were different. This is in their brief in a number of places. I don't think that they will disagree with that at all. They cite also Balfour v. Beatty, which is one of the cases on one side in which it covers the two events. There are, in fact... It wasn't really two separate events. It was a single project. Yes, sir, it was. You had to do one thing before you did the next. Yes. But that doesn't make it two separate events. No, it does not. And I do not believe that under the case law there's a warning in this policy. So damage to the existing floor is not a separate event than the painting. No, it's not, Your Honor. Your position is you don't need a separate event. You do not need a separate event. All right, why don't you explain that?  And speak into the microphone. Oh, I'm sorry if I wasn't being clear. Again, the difference in the cases which calls... There's a group of cases that have taken what's called a broad view, which do not require a second event. And there's another group of cases which have taken the narrow view, which does require. The Leap v. Trinity, and all this is in the briefs. The Leap v. Trinity Universal Insurance Company does us the good favor of listing the cases on either side. Here's what I would like to get to and the reason I wanted to sort of talk about this now and answer questions. Parallels excluded. We do not pay for loss or damage that is caused by a result from one or more of the following, and you have to go through three or four pages of the policy to get to number D, in which you find defects, errors, or emissions in property. We do not pay for loss or damage caused by or resulting from inherent defects, errors, or emissions, whether negligent or not, relating to designs or specifications, workmanship or construction, repair or renovation, repair or remodeling, renovation or remodeling. Then we get to the ensuing part. But if a defect, error, or emission as described above results in a covered peril, we do cover the loss or damage caused by that covered peril. I think the simple wording of that does not call for a second intervening event because if the defect, error, or emission, and it says as described above, so it's the workmanship, there's not room in that language, it seems to be, for a part of the second event. But I don't understand the ensuing. If there's not an ensuing event, what's, if there's not a separate event, what's the ensuing loss? The ensuing loss is the damage to the floor caused by the workmanship error. The division in the request for damages is the cost for repainting it, which was substantial, and the cost for repairing the floor, which is by doing more. You'd have, what's covered, the painting is not, the painting is not covered, but the floor is. Yes. That's what I believe is the floor. So you're saying you would have to pay for the repaint, a new paint job. We would pay for that. The cost of the paint.  And the hours to do the painting and so forth. All that, we don't ask for that. We believe, however, that the time and expense of replacing the floor underneath is covered. I don't understand how you get there from the language of the policy. I mean, I guess intuitively you can go either way, but the language of the policy, and you talk about the five cases this way, five cases that way on the broad view and so forth, we're trying to predict the Supreme Court of Arkansas, right? Yes, sir. You say we should take an unpublished out-of-circuit district court case and ignore two published decisions of our sister circuits. And that's a head-scratcher for me. Actually, no, Your Honor, I think we find the R. L. I. Wolf's Wilbur case to be a persuasive case if it's unpublished. But on that list of cases by various circuit courts and some state Supreme Courts, are some which read that language to say... You just say dump Balfour and Rocky Mountain. They got it wrong. Our district court in Texas got it right in an unpublished case. Unpublished by the Fifth Circuit. You know, that's a steep hill you're pushing a big rock up. Well, I also see that there are other cases in addition to the Wilbur case which take that same point of view. We have a narrow point of view. That's one I think the judge is advocating. No, that's where you put Balfour, right? Yes. I just read Balfour and it doesn't make sense. Is it persuasive on the insurance policy language? I don't care about broad view and separate view. Do you think that should be taken into account? The problem is there's no definition of a covered peril. So what does it mean when it says, if the defect results in a covered peril? What do you think that means? I think it means... In this instance, what it means is damage to the gym floor. Damage to the gym floor is a covered peril? Yes. Is there another definition in the policy? Elsewhere in the policy it defines it would cover damage to personal property that's being installed by the contractor. So Bob Robinson was installing all of the property, both the paint and the floor. Well, peril covered is a risk of direct physical loss, unless excluded. So it's really an all-risk policy. Yes, it is an all-risk policy. But this damage, you could say, was caused by the defective workmanship. But of course you could say that with all these hypotheticals, including the fire case and all the rest. They all relate back to the workmanship. So where do you draw the line? Well, and I think that's one of our arguments, is that in this case, I won't say it's easy to draw the line, because clearly we've been litigating this case for... We won a motion to dismiss. We got zapped on a summary judgment. Here, I think, though, we have a reading, our reading, that preserves both the exclusion, does not charge the insurance company for defective work, and the ensuing loss clause, because it would compensate Bob Robinson for, after all, what he, I assume, intended, and that is that he would be protected from damage caused by his subcontractor's work. Looks like I have reserved five minutes for rebuttal. I hope I don't have to use the five minutes for rebuttal. If the Court has any more questions, I will yield my time. You may. Thank you for your argument. Mr. Winslet, we'll hear from you. Thank you, Your Honor. May it please the Court. Greg Winslet here on behalf of RLI Insurance Company. I think, really, honestly, what we have here is a pretty straightforward case, and it's based on undisputed facts. I don't think either of the parties in this case dispute the fact that this GEM IV was defectively installed, that the painting was really a mess, almost in every respect, and I don't think the parties dispute the fact that once the painting was applied to the floor in the manner that it was, the floor had to be replaced, that there was no option available where somehow that defective painting could be removed. You just said it was defective when installed. It was installed, and then it was painted, or not? Or was it painted before it was installed? Well, the floor was put down first, and then the painting came on top of it. That's what he's relying on. How can you say there's no dispute that it was defectively installed? Their whole position is it was properly installed, and then the paint job came along. Well, I guess then my view of the world is is that the defective painting is what made it improperly installed is, I guess, the best way I can describe it. But the thing I want to point out to the Court, probably above everything else, is regardless of whether you're talking about a line of cases that interpret the ensuing loss provision broadly or narrowly, regardless, all of those cases, consistent with the policy language, they require that the excluded conduct result in a covered peril. And the only peril here, there's not a second peril, the only peril here is the fact that the painting was improperly put on the floor. That was the only reason that the floor had to be replaced. You couldn't repaint it. You couldn't remove the paint, and everybody agrees with that. And so even in the cases that the appellant relies upon, LEAP and Vision 1, even in those cases that very, very broadly construed this ensuing loss provision, even in those cases, there was a distinct, separate, covered peril. And LEAP... What's a covered peril? Well, a covered peril, as the Court indicated just a minute ago, it's an all-risk policy. So why isn't damage to the floor a covered peril? Because the only damage to the covered floor is the result of defective workmanship. There's no second peril that somehow would be otherwise covered. As an example, if the painting, for example, had come in contact with some flammables and caused a fire, well, there's your ensuing loss. Fire is a covered peril. It's not an excluded peril under the policy. In the Vision 1 case, you had a situation where the improperly installed trusses caused a collapse, which damaged a whole host of other property on that project, and the Court said, well, the defective construction produced a collapse, and a collapse is a covered peril under the policy. Well, here you could say the defective painting produced a absorption of the paint by the floor, and that required tearing up the floor. Well, Your Honor, respectfully, I would say that if the exclusion is interpreted that way, then the exception is going to swallow the exclusion. No, because you still wouldn't have to pay for the repainting. Well, if you have a factual circumstance, though, where the property cannot be repainted, and that the only remedy for the defective workmanship is completely replacing the property, then you've effectively written the exclusion out, because this property, the floor couldn't be repainted. The only remedy for what happened here, and the plaintiff agrees with this, the only remedy for what happened here is that that floor had to be completely replaced, and there was no physical damage. There was no physical damage. On my point, it's just when they replace the floor, you're not going to have to pay to paint it. You're only going to have to pay to replace the floor. Well, that's true, but the only damage is... So it doesn't swallow the exclusion, because you still don't have to pay for the part that's... Yes. Fair enough, Your Honor, fair enough. It leaves a few feathers unswallowed. Fair enough, Your Honor, but the only damages that are being sought in the case are the damages to replace the floor, and the only reason the floor had to be replaced was because the painting was improper, such that the only remedy for that was to replace the floor, and like I said, in every one of these cases, one of the things that's consistent among all of the cases that are cited by both sides, that there's always a second peril. In the Leap case, the second peril was the fact that the roof was improperly installed, but in the process of doing that, the roofing company disconnected one of the furnace vents, and because they did that, that caused moisture intrusion into the attic, which had to be replaced. So there's your second event. You've got moisture intrusion into the attic. You don't just have the defective... You're not just replacing the defective work. You're involved with something else that is a covered peril, and the fire example is a classic one that almost all the courts cite. You can defectively do something, and even if you have a defective workmanship exclusion, if that workmanship results in a fire, or if it results in a collapse, then that's the way the ensuing loss provision is supposed to work. Well, why doesn't it say that then? It doesn't say anything about events, second events. There's no definition of covered peril other than a loss, which we have here. The only reason... You lost the case in Texas. You did an appeal, but you've been on notice that the provision was susceptible to... Well, let me say this. Your Honor is correct. I personally lost that case in Texas. You personally lost it. I personally lost that case in Texas, but I will tell you that since the court asked me, we were headed to the Fifth Circuit on that case, and we ended up settling it, and I will tell you we settled it in a manner that was consistent with the idea that no one could figure out that ruling is just the best way that I can say it. So I don't really have... I don't have really a lot more to say other than what's in my brief, and I would also point the court to the trial court's decision in this case. I think what Judge Baker did was very reasoned. It was very logical, and I think summary judgment in the case was appropriate, and I would respectfully ask the court to affirm. Thank you. Thank you for your argument. Actually, I have a lot more time for rebuttal reserve than I think I need, so I guess it depends on the questions. As I told you gentlemen when we started, I thought our positions were clear. Mr. Winslet has stated his position, as I understand it. I've tried to give you mine. I understand that there's two ways to read this, and that's one good reason to start looking at that broad versus narrow. The position of Bob Robinson is one that gives effect to both the exclusion and the ensuing loss by limiting it to just cutting out the paint so it's not covered and relating only to the floor. Thank you very much. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.